**PORTNOY LAW FIRM**
1100 Glendon Ave. 15th Floor
Los Angeles, CA 90024
Tel: (310) 692-8883
Email: lesley@portnoylaw.com

Attorneys for Plaintiffs and the Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUPPORT ANIMAL HOLDINGS, LLC, and LENNYS CASITA, LLC, individually, and on behalf of all other similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>DISCOVER FINANCIAL SERVICES, DFS SERVICES, LLC, DISCOVER BANK, and DOES 1-100,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**FOR:**<br><br>(1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Unjust Enrichment; and (4) Violation of Cal. Bus. & Prof. Code §17200, *et seq*.<br><br>**DEMAND FOR JURY TRIAL** |

**Nature of the Action**

1.  The allegations herein are based upon public information, investigation of counsel, and information and belief, except those allegations which pertain to Plaintiffs' conduct, which allegations are based on personal knowledge.

2.  This is a class action brought by Plaintiffs to assert their own claim, and in their capacity as the class representatives of all other persons and entities similarly situated.

3.  This class action seeks monetary damages, restitution, specific performance, and injunctive relief to stop and correct defendants' misconduct alleged herein.

4.  Upon information and belief, Discover Financial Services, DFS Services, LLC, and Discover Bank (collectively, "Discover") incorrectly charged Plaintiffs and the other members of the Class (defined below) inflated fees by systematically and knowingly misclassifying certain Discover credit cards into the

incorrect fee category, therefore inflating Discover's fees. This misclassification harmed Plaintiffs and the Class in the form of overcharges and reduced revenues, thus unjustly benefitting Discover to the detriment of Plaintiffs and the Class.

5. Discover admitted to this conduct in their regulatory filings, which became available to the public on July 19, 2023. (*See* Discover Financial Services Form 8-K, available at https://d18rn0p25nwr6d.cloudfront.net/CIK-0001393612/a4db3f93-d8e8-44b2-a895-03b271e7be60.pdf (last accessed on August 21, 2023.))

6. Pursuant to this regulatory filing, Defendants admitted:

> Beginning around mid-2007, Discover incorrectly classified certain credit card accounts into our highest merchant and merchant acquirer pricing tier. Incremental revenue resulting from this card product misclassification amounted to less than 1% of our cumulative discount and interchange revenue, gross, since that time, or less than two basis points as a percentage of sales over this timeframe. The misclassification affected pricing for certain merchants and merchant acquirers, but not for cardholders. Based on information available as of June 30, 2023, the Company determined that the revenue impact of the incorrect card product classification was not material to the consolidated financial statements of the Company for any of the impacted periods. Notwithstanding, for go-forward comparative purposes, the Company corrected the recognition of discount and interchange revenue as well as the related impacts to assets, liabilities and retained earnings in all prior periods presented. After adjusting for tax effects, the cumulative impact to beginning retained earnings as of April 1, 2023, was a decrease of $255 million, and the impact to net income for the quarter ended March 31, 2023, was a reduction of $8 million. As of June 30, 2023, the Company's consolidated financial statements reflect a liability of $365 million within accrued expenses and other liabilities to provide refunds to merchants and merchant acquirers as a result of the card product misclassification.

7. According to Defendant's own admissions, the Defendants misclassified transactions in order to collect additional fee revenue that would have been obtained absent the misclassification.

8. Discover's conduct directly caused millions of dollars in financial damages to the Plaintiffs and the Class.

**Parties**

9. Support Animal Holdings is a limited liability corporation with its principal place of business in Los Angeles, California. Plaintiff is a resident of California. Plaintiff has accepted Discover cards

from its customers since at least 2019 and paid inflated fees to Discover as a result of Discover's misconduct alleged herein.

10. Lenny's Casita is a limited liability corporation with its principal place of business in Los Angeles, California. Plaintiff is a resident of California. Plaintiff has accepted Discover cards from its customers since at least 2021 and paid inflated fees to Discover as a result of Discover's misconduct alleged herein.

11. Defendant Discover Financial Services is a Delaware corporation with headquarters in Riverwood, Illinois. Discover Financial Services is the parent company of subsidiaries, including Defendants DFS Services LLC and Discover Bank.

12. Defendant Discover Bank is a federally insured online bank chartered and incorporated in Delaware, with headquarters in Riverwood, Illinois. On information and belief, Discover Bank acts as the Issuing Bank for transactions that take place on the Discover card network. Discover Bank issues and services Discover credit card accounts.

13. Defendant DFS Services LLC is a Delaware Limited Liability Company with headquarters in Riverwood, Illinois. On information and belief, DFS Services LLC operates the Discover network, which processes Discover credit card transactions, including by assigning an Interchange Fee to such transactions. DFS Services LLC is the servicing agent of Discover Bank, and one of the world's largest payment networks.

14. Without limitation, defendants DOES 1 through 100 include agents, partners, joint ventures, subsidiaries and/or affiliates of Discover. As used herein, where appropriate, the term "Discover" is also inclusive of Defendants DOES 1 through 100.

15. Plaintiffs are unaware of the true names of defendants DOES 1 through 100. Defendants DOES 1 through 100 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against defendants DOES 1 through 100 when the true names are ascertained or as permitted by law or by the Court. The named defendants (including DOES) are acting in concert. Therefore, there is a unity of interest and ownership, such that any individuality and separateness ceases to exist.

CLASS ACTION COMPLAINT

16. Any reference to an act, deed, or conduct of the "Defendants" within this Complaint signifies that such actions were performed by the Defendants themselves or through their representatives actively involved in managing, directing, controlling, or handling their ordinary business affairs. These representatives may include employees, agents, officers, directors, or others associated with the Defendants' regular operations.

**Venue and Jurisdiction**

17. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d)(2) and (6) because: (i) there are 100 or more Class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00 exclusive of interest and costs; and (iii) there is minimal diversity; Plaintiffs and the Defendants are citizens of different states.

18. Defendants have sufficient minimum contacts in California, intentionally avail themselves of the California markets through their business activities, and derive direct profit from these activities. As such, the exercise of jurisdiction by this Court is both necessary and proper, granting the Court personal jurisdiction over Defendants.

19. Furthermore, the Court possesses specific personal jurisdiction over Defendants. This is based on several factors, including, but not limited to, Defendants' alleged misconduct in California, which was directed at the state itself, and their utilization of the privileges of conducting activities within California. The claims of Plaintiffs and the California-based Class members arise out of and are directly related to Defendants' contacts with, and actions within and directed at, California.

20. Moreover, the exercise of jurisdiction over Defendants in California would be both fair and reasonable. This Court and California have a substantial interest in adjudicating the matter, and this forum would facilitate an efficient resolution of the lawsuit. Additionally, the forum is convenient to the Plaintiffs and the Class and would not be unreasonably burdensome to Defendants. Therefore, this Court has both the proper and necessary jurisdiction to oversee this case.

21. Venue is proper in this District, *inter alia*, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of Discover's conduct arose in this District; and because Plaintiffs are located in this District and incurred and paid improper fees and overcharges in this District.

CLASS ACTION COMPLAINT

## FACTUAL ALLEGATIONS

22. From at least 2019, Plaintiffs experienced inflated fees and reduced revenues on Discover customers' card transactions processed. This was a direct result of Discover's misclassification of Plaintiffs' card type (described below), which caused Plaintiffs to be charged at a higher rate and thus deprived Plaintiffs and the Class of portions of the transaction amounts they were rightfully entitled to receive.

23. This deliberate misclassification scheme involved Discover falsely representing to various parties, including the Plaintiffs, card processors, acquirers, and the general public, that certain card transactions fell into higher pricing tiers than where they truly belonged (the misclassification scheme).

24. Discover recently disclosed this misclassification scheme (*see above*).

## THE MISCLASSIFICATION SCHEME

*i.   Discover's Dual Roles: Issuing Bank and Card Network*

25. Discover stands apart from other major credit card providers by directly issuing its cards to consumers rather than through third-party banks. As a result, Discover serves as both an issuing bank, the party who provides the credit, and a card network, the communication network administering the card transaction. Discover assigns an "Interchange Fee" when processing a transaction, primarily determined by the applicable "Interchange Rate" multiplied by the transaction amount. For instance, an Interchange Rate of 2.50% on a transaction amount of $1,000 would result in an Interchange Fee of $25 and a $0.10 flat fee. This fee and rate are determined systematically using Discover's internal automated system.

26. Following this, Discover, acting as the issuing bank, charges the customer's account for the full transaction amount. The issuing bank then forwards the amount, minus the Interchange Fee, to the acquirer. In most cases, the acquirer or processor directly passes this Interchange Fee to the merchant in the form of a reduced payment. For some, the charge is indirect, but it still results in a reduced merchant payment.

27. Therefore, for a typical Discover card transaction, the merchant ultimately receives the transaction amount less the Interchange Fee retained by Discover, the processor's markup, and any acquirer's assessment. The Interchange Fee for a given transaction is set by the card network, Discover in this case, and depends on several factors, such as the processing method (e.g., if the card is present or not), the type of

merchant, and the category of the card. Discover publishes a specific Interchange Rate Sheet, openly outlining the Interchange Rates for card transactions, depending on the card's classification. For example, according to the Interchange Rate Sheet, a card identified as "Discover Consumer Credit" would have an Interchange Rate of 1.56% of the transaction amount plus a flat fee of $0.10 if the card is present during the transaction. Conversely, a card identified as "Discover Commercial Credit" would be assigned an Interchange Fee of "2.30% + $0.10" under the same circumstances.

28. These Interchange Rate Sheets and other publications provide Plaintiffs and the Class with certain contractual and quasi-contractual rights to pay the appropriate fees and thereby receive their contracted transaction amounts.

    *ii. Discover Systematically Misclassified Card Categories for Certain Discover Transactions*

29. Since at least 2007, Discover has been in direct violation of its promises and obligations to the Plaintiffs and the Class by systematically and knowingly applying the incorrect Interchange Rates and Interchange Fees to Discover card transactions. These rates and fees were higher than those detailed in Discover's Interchange Rate Sheet, accepted by the Plaintiffs and the Class. This action has caused direct harm to the Plaintiffs and the Class through fee overcharges and has unjustly benefited Discover by inflating their fees.

30. Discover executed this by knowingly and systematically misidentifying the card type or category for specific transactions. Since at least 2007, Discover has intentionally applied higher Interchange Rates and Interchange Fees, typically associated with Commercial Discover card transactions, to certain transactions that should have been subject to lower rates and fees because they did not involve Commercial cards.

31. For example, Discover's practice during the Class Period was to wrongfully classify Consumer credit cards as Commercial cards to assign artificially higher fees and collect higher revenues. Upon information and belief, this occurred if the cardholder using the Consumer credit card also maintained a Commercial account with Discover. Even though Discover was aware, and its systems indicated, that the cardholder utilized a Consumer credit card for the transaction, Discover nonetheless misclassified the card as

a Commercial card. They misrepresented that the transaction in question involved a Commercial card and improperly assigned a higher-than-applicable Interchange Rate and Interchange Fee linked to Commercial card transactions. This practice led to payment of elevated fees by the Plaintiffs and other merchants in the Class. As a result, they received a smaller portion of the transaction amount than they should have, which would not have occurred without Discover's misconduct and breach. This practice led to improper, inflated revenues, thereby unjustly benefiting Defendants.

32. Throughout the Class Period, Plaintiffs incurred fees, including the Interchange Fee, on each Discover card transaction they processed. These charges included overcharges due to Discover's misclassification conduct, reducing the amounts that Plaintiffs and the Class should have received. Multiple Discover card transactions were misclassified, leading to several overcharges and situations where Plaintiffs were deprived of portions of the transaction amounts they were entitled to under various agreements and good faith obligations.

33. It is believed that Discover has been aware of this misclassification issue and the consequent overcharges to Plaintiffs and the Class since 2007 or for many years at least. Despite this awareness, Discover intentionally chose not to correct the issue or provide any retrospective remedy to Plaintiffs and the Class as of this date.

34. Furthermore, Discover's internal database(s) reportedly contain the information necessary for the Class Period to identify both the instances of card misclassifications and the corresponding overcharges to Plaintiffs and the Class, along with the precise dollar amounts of these overcharges.

## **CLASS ACTION ALLEGATIONS**

35. Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure 23(a)(b)(1), (b)(2) and (b)(3) on behalf of all merchants who, at any time from 2007 to the present (the "Class Period"), accepted Discover credit cards and were charged fees for one or more transaction(s) that were higher than the Interchange Fees applicable to such transaction(s) under Discover's Interchange Rate Sheet (the "Class"). Additionally, this case is brought by Plaintiffs on behalf of all merchants within California who, at any time from 2007 to the present, accepted Discover credit cards and were charged fees

for one or more transaction(s) that were higher than the fees applicable to such transaction(s) under Discover's contemporaneous Interchange Rate Sheet (the "California Subclass").

36. Excluded from the Class and California Subclass are: (1) any entity in which Defendants (or any of them) have a controlling interest; (2) officers or directors of Defendants; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiffs and the Class.

37. The members of the Class are so numerous that the joinder of all members is impracticable. Plaintiffs currently lack exact information regarding the numbers of Class and California Subclass members and anticipate that this data can only be obtained through proper discovery. However, it is believed that each of these groups will likely consist of thousands of members. This belief is founded on the fact that Discover ranks among the largest card issuers in the United States.

38. Plaintiffs' claims are typical of the claims of the members of the Class and California Subclass as all members of the Class are similarly affected by Defendants' continuous and systematic misclassification of cardholders, such that the claims made by the Class and California Subclass arise under the same legal theories.

39. Plaintiffs will fairly and adequately protect the interests of the Class members and has retained counsel competent and experienced in class action litigation to ensure such protection.

40. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. Whether Discover owed the Plaintiffs and the Class any contractual obligations to assess proper fees in accordance with the terms thereof;

    b. Whether, alternatively, Discover had a quasi-contractual obligation to Plaintiffs and the Class;

    c. Whether Discover breached its obligation to Plaintiffs and the Class by assigning and charging fees that were higher than those specified in Discover's published rate sheets;

    d. Whether Discover has been unjustly enriched by its conduct alleged herein; and

e. Whether Discover has engaged in unfair, unlawful, and/or fraudulent conduct in violation of Cal. Bus. & Prof. Code § 17200 et seq. by its conduct alleged.

41. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## FIRST CAUSE OF ACTION – BREACH OF CONTRACT

### (Against all Defendants on Behalf of the Entire Class)

42. Plaintiffs incorporate the preceding allegations by reference as if fully set forth herein.

43. Discover, Plaintiffs, and the Class each have contractual rights and obligations, pursuant to various agreements and quasi-contractual agreements.

44. Under these contractual rights, Plaintiffs and the Class performed their obligations by paying appropriate fees and otherwise complying with all applicable requirements.

45. Discover, on the other hand, breached its contractual obligations to Plaintiffs and the Class by overcharging transaction fees.

46. Discover breached the terms of its contracts with Plaintiffs and the Class by misclassifying certain card transactions and improperly calculating Discover's fees.

47. These misclassifications resulted in reduced revenues for Plaintiffs and the Class.

48. Plaintiffs, on behalf of itself and the Class, seeks damages for Discover's breaches of contract alleged herein, in an amount to be proven at trial.

49. Plaintiffs, on behalf of itself and the Class, seeks an order requiring specific performance by Discover of its obligations under its Interchange Rate Sheets.

## SECOND CAUSE OF ACTION

## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

**(Against all Defendants on Behalf of the Entire Class)**

50. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

51. Also, under the terms of the contracts described herein, Discover owed to Plaintiffs and the Class an implied covenant of good faith and fair dealing.

52. The covenant of good faith and fair dealing places a burden on the contractual parties to execute their obligations in the spirit of the agreement, even when the terms of the agreement might permit an abuse. In other words, a party to an agreement should not abuse their rights and misinterpret the terms of the agreement in a way that violates the spirit of the agreement, and results in one party unfairly losing value due to the bad faith and lack of honesty of the other party.

53. Here, Discover breached the implied covenant of good faith and fair dealing in its contracts with Plaintiffs and the Class by knowingly misclassifying certain card transactions. These misclassifications resulted in paying Plaintiffs and the Class reduced transaction amounts, as a result of Discover's breach of the implied covenant of good faith and fair dealing.

54. Plaintiffs, on behalf of itself and the Class, seeks damages for Discover's breaches of contract alleged herein, in an amount to be proven at trial.

55. Plaintiffs, on behalf of itself and the Class, seeks an order requiring specific performance by Discover of its obligations under its Interchange Rate Sheets.

**THIRD CAUSE OF ACTION - UNJUST ENRICHMENT**

**(Against all Defendants on Behalf of the Entire Class)**

56. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

57. To the extent required, this cause of action is pled in the alternative.

58. From time to time, Discover published certain rate sheets. These rate sheets had the effect of creating contractual and quasi-contractual obligations to Plaintiffs and the Class.

59. As alleged herein, for Plaintiffs and the Class, Discover misclassified certain card transactions and charged higher fees to Plaintiffs and the Class.

60. As a result of the misconduct alleged above, Discover unjustly enriched itself by millions of dollars in incorrect fees. Plaintiffs and the Class have conferred a benefit on Defendant that Defendant does not deserve and obtained through unlawful and fraudulent means.

61. Plaintiffs and the Class lack an adequate remedy at law to recover the amounts paid to Discover.

62. Plaintiffs, on behalf of itself and the Class, seeks restitution from Discover all of the overcharges alleged herein.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §17200, ET SEQ.**

**(Against Defendants on Behalf of Plaintiffs and the California Subclass)**

63. The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

64. Discover's conduct allegedly contravened the "unfair," "unlawful," and "fraudulent" elements of California's Unfair Competition Law (UCL), found in California Business and Professions Code §§ 17200, et seq.

65. California Business and Professions Code §§ 17200 permits California residents to protect themselves against "unlawful, unfair, or fraudulent business act(s)."

66. Discover's actions, described herein, fall squarely into the UCL's definition of unfair competition and thereby provide Plaintiffs and the Class with an opportunity to enforce their rights.

67. Discover's actions directly led to financial losses, loss of property, and other vested interests for Plaintiffs and the California Subclass members. Discover's conduct resulted in the unlawful receipt and retention of money, including overcharges of certain fees, from Plaintiffs and the California Subclass.

68. Discover acted unlawfully, unfairly, fraudulently, and unethically in misclassifying certain credit card transactions. Discover had a clear incentive in misclassifying these transactions and thereby gaining hundreds of millions of dollars.

69. Importantly, Plaintiffs and the California Subclass lack an adequate legal remedy to obtain an injunction compelling Discover to cease its misclassification practice and corresponding overcharges, especially if the specific performance remedy for their breach of contract claim is deemed to require less than this relief.

70. The UCL gives courts broad equitable power to "make such orders or judgments...as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition." Cal. Bus. & Prof. Code § 17203.

71. Plaintiffs seek an order granting restitution to Plaintiffs and the California Subclass in an amount to be proven at trial, including for the fee overcharges that Plaintiffs and the California Subclass have paid.

72. Plaintiffs, on behalf of itself and the California Subclass, further seek an award of attorney's fees and costs under Cal. Code Civ. Proc. § 1021.5.

## **PRAYER**

WHEREFORE, Plaintiffs, on behalf of itself and the Class and California Subclass, pray for judgment as follows:

A. For an order certifying this class action, appointing Plaintiffs' counsel as class counsel, and appointing Plaintiffs as class representative.

B. For compensatory damages and restitution on all applicable claims and in an amount to be proven;

C. For an order requiring Discover to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

D. For an order enjoining the wrongful conduct alleged herein;

E. For an order requiring specific performance by Discover of its contractual obligations to Plaintiffs and the class;

F. For costs;

G. For pre-judgment and post-judgment interest as provided by law;

H. For attorney's fees under the common fund doctrine, and all other applicable law and sources; and,

I. For such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of itself and the Class and California Subclass, demand a trial by jury on all issues so triable.

DATED: August 29, 2023

                                                *Lesley Portnoy*
                                                Lesley Portnoy, Esq.
                                                In Pro Per